UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MICHAEL C. SMITH, | ) |
| Petitioner, | ) |
| v. | ) Case No. 13-CV-2068 |
| RICK HARRINGTON, Warden, | ) |
| Respondent. | ) |

## OPINION

On March 25, 2013, Petitioner Michael C. Smith filed his Petition for Writ of Habeas Corpus By a Person in State Custody Pursuant to 28 U.S.C. § 2254 (#1). Respondent Rick Harrington, Warden, filed his Answer (#10) on December 10, 2013. Petitioner filed a Reply (#11) on January 10, 2014. For the following reasons, Petitioner's Petition (#1) is DENIED.

## BACKGROUND

In July 2008 a jury convicted Petitioner of armed robbery (720 ILCS 5/18-2(a) (West 2006)), which caused him to meet the statutory definition of a "habitual criminal" (720 ILCS 5/122-2.1(a)(2) (West 2010)). Defendant was sentenced to life in prison. Defendant's conviction was affirmed on direct appeal and his petition for leave to appeal (PLA) was denied by the Illinois Supreme Court. Petitioner subsequently filed a postconviction petition, which the trial court denied. The denial was affirmed by the appellate court and the PLA was denied by the Illinois Supreme Court. On March 25, 2013, Petitioner filed this Petition for a Writ of Habeas Corpus by a Person in State Custody

Pursuant to 28 U.S.C. § 2254 (#1). Respondent has filed his Answer (#10) and this case is now ready for judgment.

Factual Background

The following facts are taken from the appellate court orders affirming Petitioner's conviction on direct review (*People v. Smith*, No. 4-08-0742 (Ill. App. Ct. 2009)) and affirming the denial of Petitioner's postconviction petition (*People v. Smith*, 2012 IL App (4th) 110046-U). This court presumes the factual determinations made by the Illinois court of appeals in those decisions to be true. 28 U.S.C. § 2254(e)(1); *Whitman v. Bartow*, 434 F.3d 968, 969 (7th Cir. 2006).

On November 21, 2007, the Colonial Pantry convenience store in Champaign, Illinois, was robbed at 12:50 a.m. Store clerk Alissa Perillo testified that she was alone in the store when a tall, skinny man in his late 20s or early 30s entered. The man was wearing a navy blue or black hooded sweatshirt and white baggy pants. He told her that he wanted to buy cigarettes. Perillo asked the man for his date of birth, because she needed that information to open the cash register. The man told her his date of birth was August 12, 1968. The man then grabbed Perillo's sweatshirt, held a box cutter against her side, and told her that this was a robbery and to give him money. She opened the cash register, and the man reached over the counter and took the money out of the cash drawer. Then, leaving the box cutter and cigarettes on the counter, he walked out of the store.

Perillo did not remember the robber's face. She was not wearing her glasses at the time of the incident, so her vision was a little fuzzy. On November 27, 2007, the police showed Perillo a photographic array. She chose photograph No. 2 and told the police that if the person in that photograph was not the robber, it could have been the person in photograph No. 1. Neither person, however, was Petitioner. When Petitioner was asked to stand up in the courtroom, Perillo testified

that she thought that he and the robber were of about the same height and weight. But she could not positively identify Petitioner as the robber, even after, upon request, he approached her in the courtroom and grabbed her by the sweatshirt.

Video surveillance cameras recorded the robbery. In the video, the robber's face can be seen. The robber can also be seen using his palm to push the store's door open as he makes his exit. Petitioner's palm print was found on the door, in the exact location where the robber can be seen placing his palm on the door.

At 12:20 a.m. on November 21, 2007, University of Illinois police officer Michelle Ortiz-Standifer was parked in the parking lot of the Colonial Pantry when a man dressed in white or light gray cargo pants and a black hooded sweatshirt walked in front of her car. The parking lot was well-lit. The man looked her in the eye, stopped, turned around, and paced back and forth. The man looked at Officer Ortiz-Standifer again, turned away, and walked to the sidewalk, where he stood for about five minutes. This behavior struck Ortiz-Standifer as suspicious.

Ortiz-Standifer was dispatched to another part of the campus and she drove out of the parking lot. Later, she heard over the radio that the Colonial Pantry had been robbed. She returned to the store and watched the surveillance video of the robbery. She recognized the robber as the man she had seen in the parking lot. She noted the robber was wearing the same hooded sweatshirt and painter's pants she had initially observed. In court, Ortiz-Standifer identified Petitioner as the man.

Champaign police officer Douglas Wendt looked for fingerprints inside the store and lifted fingerprints from inside the southwest door after watching the robber, in video, exit the store through that door. Pursuant to stipulation of the parties, Gary Harvey, a forensic scientist, would testify that he found no prints suitable for comparison on either the cigarette package or box cutter. However,

3

Harvey compared Petitioner's prints to the prints lifted from the southwest door and found that Petitioner's palm print matched one of the prints lifted from the door.

At the time of Petitioner's trial, John Vernon was serving a sentence of four and one-half years' imprisonment for felony domestic battery. In December 2007, when Vernon was still a free man, a Champaign detective, Donald Shephard, questioned him about a robbery of the Colonial Pantry. Vernon was under the impression the robbery happened in December 2007.

On some occasion around the time of December 2007, Vernon, a cocaine addict, was smoking crack cocaine at "Hot Papa's House" on Tremont Street, a place that people frequented for the purpose of using or selling drugs. A man he knew only as "Mike" was there smoking crack cocaine with him. He identified Petitioner, in court, as the man he knew as "Mike." At some point in the evening, Petitioner disappeared and returned with money. Vernon asked him where he had obtained the money, and Petitioner replied it was none of Vernon's business. Vernon did not know if Petitioner had any money on his person before he disappeared. He added that crack addicts would do anything to get money with which to buy more cocaine. Vernon was uncertain if this incident happened on the night of the robbery. When Shephard showed Vernon the video of the robbery, Vernon told Shephard the robber in the video was the man whom he knew as "Mike."

Champaign police officer Thomas Petrilli was familiar with "Hot Papa's House." It was a well-known meeting place for the use and sale of drugs. Harry Ezra Johnson was its owner, and the police had arrested him several times for drug offenses. Petrilli had participated in the execution of at least three warrants at the house. On December 14, 2007, about four houses from Johnson's house, Petrilli stopped a car for failure to use a turn signal. He identified Petitioner, in court, as the driver of the car. At the time of this traffic stop, Petitioner was wearing white carpenter's or

4

painter's pants, and two box cutters were inside his car. Petitioner denied using drugs and told Petrilli he was self-employed as a painter.

Shephard testified that Petitioner's birthday was August 12, 1968- the same birth date the robber had given Colonial Pantry clerk Perillo- and he believed that Petitioner was six feet two inches tall and that he weighed 175 pounds. Shephard interviewed Petitioner on February 14, 2008. During the interview, Petitioner was wearing a black pullover coat, white painter's pants, and tennis shoes. Shephard thought the pants and shoes were similar to those the robber had worn in the video. Petitioner told Shephard he probably had been inside the Colonial Pantry, although he could not remember when. He explained he had gone to "Hot Papa's House" only to visit a cousin who lived there. Petitioner denied using cocaine.

The prosecution then rested. The defense rested without presenting any evidence. The jury returned a verdict finding Petitioner guilty of armed robbery. After hearing and denying Petitioner's motion for a new trial, the trial court sentenced Petitioner to life in prison.

*Direct Appeal*

On direct appeal, the only issue raised was whether the evidence presented at trial was sufficient to convict Petitioner beyond a reasonable doubt. The appellate court concluded the evidence was sufficient, holding:

> "In this case, a rational trier of fact could reasonably find defendant guilty of armed robbery. The robbery was captured on video. The video was introduced into evidence, and the jury was allowed to evaluate if defendant was the robber in the video. A police officer saw defendant in the Colonial Pantry parking lot minutes before the robbery took place and testified defendant is the robber shown in the

5

surveillance video. Defendant's palm print was found on the store's exit door, in the same location where the video shows the robber touching the door. The robber even reported he had the same 1968 birthday as defendant." *Smith*, No. 4-08-0742, at 4.

Petitioner filed a pro se PLA with the Illinois Supreme Court, again arguing the evidence presented against him was insufficient to support a conviction. The Illinois Supreme Court denied Petitioner's PLA on March 24, 2010.

*Postconviction Proceedings*

On December 10, 2010, Petitioner filed a pro se postconviction petition, in which he argued that his trial counsel was ineffective for failing to object to Vernon's other-crimes testimony and that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness on direct appeal. The trial court summarily dismissed the petition as frivolous and patently without merit, finding overwhelming evidence of Petitioner's guilt, including Vernon's testimony that he and Petitioner were smoking crack on the night of the robbery and Petitioner's telling Vernon that night that he had "hit a lick" (*i.e.* committed a robbery). The court also concluded that Petitioner's petition failed to establish that trial counsel's failure to object to the other-crimes evidence prejudiced Petitioner at trial. The Office of the State Appellate Defender (OSAD) was appointed to represent Petitioner on his appeal from the summary dismissal. On appeal, Petitioner argued that the petition should be remanded for second-stage postconviction proceedings because his pro se petition stated the gist of a constitutional claim of ineffective assistance of counsel for failing to object to the introduction of the other-crimes evidence and because the trial court's written order summarily dismissing the postconviction petition misstated key evidence and held Petitioner to a higher burden than is required of petitioners at the first stage of post-conviction review.

The appellate court rejected Petitioner's arguments. The appellate court noted that the State conceded that the trial court did misstate evidence as to what Petitioner told Vernon and that the trial court did use the wrong legal standard. The appellate court first concluded that, based on the Illinois Supreme Court decision in *People v. Petrenko*, 931 N.E.2d 1198 (Ill. 2010), Petitioner had forfeited the claim that trial counsel was ineffective because the alleged ineffective assistance was based entirely on facts in the record that Petitioner could have, but did not, raise on direct appeal. *Smith*, 2012 IL App (4th) 110046-U, ¶ 40. In Petitioner's case, the court found that the claim of ineffective assistance to be based entirely on facts appearing in the trial transcript, namely trial counsel's failure to object to other-crimes evidence in Vernon's testimony, and thus the record enabled Petitioner to raise the claim on direct appeal and, because he did not do so, the court considered Petitioner to have forfeited the claim under *Petrenko*. *Smith*, 2012 IL App (4th) 110046-U, ¶ 40. The court next addressed whether appellate counsel on direct appeal was ineffective. The court found that appellate counsel was not ineffective, because a reasonable appellate counsel could decide that establishing prejudice from the other-crimes evidence- that is, establishing a reasonable probability that the verdict would have been different but for the other-crimes evidence- was impossible given the overwhelming evidence of Petitioner's guilt. *Smith*, 2012 IL App (4th) 110046-U, ¶ 41. In his pro se PLA from the appellate court order, Petitioner argued only his claim that trial counsel was ineffective. He did not raise the argument regarding appellate counsel's effectiveness. The Illinois Supreme Court denied the PLA on May 29, 2013.

ANALYSIS

Petitioner filed this Petition for Writ of Habeas Corpus By a Person in State Custody Pursuant to 28 U.S.C. § 2254 (#1) on March 25, 2013. Petitioner raises three grounds for habeas

7

review. First, Petitioner claims that, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, the evidence at trial was insufficient to convict him beyond a reasonable doubt. Second, Petitioner argues that, in violation of the Fifth, Sixth, and Fourteenth Amendments' Due Process and Equal Protections clauses, he was denied his right to effective assistance of counsel when trial counsel failed to object to other-crimes evidence that he claims prejudiced him at trial and denied him his right to a fair and impartial trial. Third, Petitioner has added an "actual innocence" claim, arguing that he was denied due process and equal protection under the Fourteenth Amendment because he was convicted and sentenced for a crime that he is actually innocent of committing.[1] Respondent responds that: (1) Petitioner's sufficiency of the evidence claim should be denied because it was reasonably denied in state court, and thus § 2254(d) bars relitigation; (2) Petitioner's ineffective assistance claim is procedurally defaulted because it could have been raised on direct appeal in state court but was not; and (3) Petitioner's "actual innocence" claim cannot excuse his defaults and does not state a claim for relief. Each claim will be addressed in turn.

Ground One: Insufficient Evidence

Petitioner argues that, in violation of the Due Process Clause, insufficient evidence was produced at trial to convict him of armed robbery beyond a reasonable doubt. In support of this claim, Petitioner argues that "the only occurrence witness did not identify Petitioner." Respondent counters that Petitioner's claim is barred by § 2254(d) because the state court decisions affirming

---

[1] It should be noted that, in his Reply (#11), Petitioner claims that he is *not* raising the sufficiency of the evidence and the ineffective assistance of counsel claims, but, rather, in his petition, is *only* raising the actual innocence claim. Therefore, Petitioner appears to have withdrawn his sufficiency of the evidence and ineffective assistance claims. Nevertheless, the court will address those claims out of an abundance of caution.

8

Petitioner's guilt were not outside the bounds of reasonable debate and did not result in a decision contrary to federal law, as determined by the U.S. Supreme Court.

The state appellate court adjudicated Petitioner's argument on the merits. "Where a state court adjudicated the petitioner's claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits a federal court from granting habeas relief unless the state-court adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence' before the state court." *Newman v. Harrington*, 726 F.3d 921, 927 (7th Cir. 2013), quoting 28 U.S.C. § 2254(d)(1)-(2). A federal court's review of the state court decision under AEDPA is limited to the record before the state court. *Newman*, 726 F.3d at 927. Federal courts reviewing habeas cases, generally, are limited to deferential review of the reasonableness, rather than the absolute correctness, of a state court decision. *Newman*, 726 F.3d at 927.

> "Under § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.' [citation omitted] 'A state court decision is an 'unreasonable application of ... clearly established Federal law' when the court applied Supreme Court precedent in 'an objectively unreasonable manner.''' [citation omitted] A 'state prisoner must show that the state court's ruling on the claim ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' [citation omitted] Under § 2254(d)(1), 'we presume that the courts' factual determinations are correct unless [the petitioner] rebuts the presumption by

9

clear and convincing evidence. [citation omitted] This standard is demanding, but not insurmountable. [citation omitted] As for § 2254(d)(2), federal courts conclude that a state court decision was based on an unreasonable determination of the facts 'if it rests upon factfinding that ignores the clear and convincing weight of the evidence.' [citation omitted]" *Newman*, 726 F.3d at 927-28 (emphasis in original).

The pertinent standard for a sufficiency of the evidence claim is the U.S. Supreme Court decision in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Monroe v. Davis*, 712 F.3d 1106, 1118 (7th Cir. 2013). Under *Jackson*, the evidence, construed in the light most favorable to the State, is sufficient to support the conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt. *Monroe*, 712 F.3d at 1118, *citing Jackson*, 443 U.S. at 319. Because this court is considering Petitioner's claim on collateral review rather than on direct appeal of the conviction, AEDPA "engrafts an additional layer of deference onto this inquiry: [the court] may grant relief on this claim only if the Illinois Appellate Court applied the *Jackson* standard unreasonably to the facts of [Petitioner]'s case." *Monroe*, 712 F.3d at 1119.

The Illinois appellate court did not cite *Jackson*, but it recited the same standard. *See Monroe*, 712 F.3d at 1119. The court stated:

> "When reviewing the sufficiency of the evidence, the standard of review is whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. *People v. Ross*, 891 N.E.2d 865, 876 (Ill. 2008). 'It is the trier of fact's responsibility to determine the witnesses' credibility and the weight given to their

testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence; we will not substitute our judgment for that of the trier of fact on these matters.' *People v. Ortiz*, 752 N.E.2d 410, 425 (Ill. 2001)." *Smith*, 4-08-0742, at 4.

For the sufficiency of the evidence standard, the *Ross* decision cited to *People v. Collins*, 478 N.E.2d 267, 277 (Ill. 1985), which quoted the standard directly from *Jackson*. The Illinois appellate court therefore correctly identified the proper standard, the court must now determine whether the Illinois court applied that standard properly. In assessing the reasonableness of the Illinois court's holding as to the sufficiency of the evidence underlying Petitioner's conviction, this court must of course look to what state law requires to convict an individual of armed robbery. *See Monroe*, 712 F.3d at 1119-20. The Illinois armed robbery statute Petitioner was convicted under states that a person commits armed robbery when they violate section 18-1 (the robbery statute) and "carries on or about his or her person or is otherwise armed with a dangerous weapon other than a firearm." 720 ILCS 5/18-2(a)(1) (West 2006).

Here, the court finds that the Illinois appellate court properly applied the U.S. Supreme Court's *Jackson* standard in a reasonable manner. The armed robbery in question was captured on the store's surveillance video. Officer Ortiz-Standifer positively identified Petitioner as the man she saw standing in the Colonial Pantry parking acting suspiciously. Later, upon viewing the surveillance video of the robbery, Officer Ortiz-Standifer identified the robber as the man she saw standing in the parking lot. In court, she identified Petitioner as the robber. Further, Officer Wendt lifted fingerprints from the store's exit door in the same location where the video showed the robber touching his door on the way out. The prints matched Petitioner. Also, when the store clerk Perillo

asked the robber for his birthday, he replied "August 12, 1968," the same birthday as Petitioner. Despite Perillo's inability to positively identify Petitioner as the robber (Perillo did not remember the robber's face as she was not wearing her glasses that night, causing her vision to be fuzzy), the remaining evidence, construed in the light most favorable to the State, is certainly sufficient to support the conviction because a rational trier of fact could find the facts that Petitioner committed the robbery and was armed with a dangerous weapon (a box cutter) while doing so to have been proved beyond a reasonable doubt. *See Monroe*, 712 F.3d at 1118. Taking into account the additional layer of deference this court must consider on collateral review, the court finds that the Illinois appellate court's decision was not contrary to, or did not involve an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court, and further finds that the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the Illinois court proceeding. *See Monroe*, 712 F.3d at 1119; 28 U.S.C. § 2254(d). Therefore, Petitioner's petition must be DENIED on this ground.

Ground Two: Ineffective Assistance of Trial Counsel

Petitioner next claims that he was denied his right to effective assistance of trial counsel because his trial counsel failed to object to the other-crimes evidence introduced through the testimony of John Vernon, which he claims prejudiced him and denied him his right to a fair trial. Respondent argues that this claim is procedurally defaulted, because the claim was apparent from the record, and thus Illinois law required the claim be raised on direct appeal.

The Illinois appellate court found that Petitioner had forfeited his ineffective assistance of trial claim because he did not raise it on direct appeal. The court cited to the Illinois Supreme Court decision of *People v. Petrenko*, 931 N.E.2d 1198 (Ill. 2010), which held that "issues that could have

12

been raised on direct appeal but were not are forfeited" and because the defendant's claim in *Petrenko* concerning trial counsel's failure to contest the validity of a search warrant was based entirely on facts contained in the trial court record, the court found the claim could have been raised on direct appeal, and the defendant's failure to do so resulted in its forfeiture. *Petrenko*, 931 N.E.2d at 1204.

Concerning forfeiture as an independent and adequate state ground, the Seventh Circuit had held:

> "When reviewing a petition for a writ of habeas corpus, a federal court will not review a question of federal law if the state decision rested on an adequate and independent state ground for dismissal, including a state procedural rule. [citation omitted] A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground. [citation omitted]
>
> Under Illinois law, '[f]ailure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding.' [citation omitted] An exception applies to this general rule 'in instances where the facts relating to the claim do not appear on the face of the original appellate record.' [citation omitted] '[I]t is not so much that such a claim could not have been presented or raised by a party on direct appeal, but rather that such a claim could not have been *considered* by the reviewing court because the claim's evidentiary basis was *de hors* the record.' [citations omitted]" *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) (emphasis in original).

Here, Petitioner only challenged trial counsel's ineffectiveness based on trial counsel's failure to challenge admission of other-crimes evidence in Vernon's testimony, all of the information relating to which was clearly within the scope of the appellate court's review on direct appeal and is readily apparent in the record of the trial. *See Chandler*, 552 F.3d at 611. Moreover, Petitioner, in his Reply, does not even respond to Respondent's argument in this respect. Indeed, Petitioner apparently withdraws this claim as a ground for habeas relief in his petition. The Illinois appellate court's determination that Plaintiff's ineffective assistance of trial counsel claim was forfeited is thus an adequate and independent state ground, and the claim is unreviewable on federal habeas. *See Chandler*, 552 F.3d at 611.

Ground Three: Actual Innocence

In his third ground, Petitioner argues he was actually innocent of the crime and thus was denied due process and equal protection under the Fourteenth Amendment. Respondent has misconstrued Petitioner's actual innocence claim as trying to raise new evidence or excuse procedural default. Rather, a thorough review of the arguments Petitioner makes in both his initial Petition (#1) and Reply (#11) clearly show that Petitioner is not alleging newly discovered evidence proving actual innocence. Rather, Petitioner is making a claim for actual innocence based on evidence already adduced at trial: (1) no physical evidence tied him to the crime (ignoring the fingerprint evidence) and (2) Perillo could not positively identify him from the stand or in a photo lineup. Petitioner is essentially making a sufficiency of the evidence argument. This court and the Illinois courts have already considered, and rejected, these arguments as a basis for finding the evidence at trial insufficient to convict Petitioner. The evidence presented at trial was sufficient to

14

convict Petitioner of the crime charged. Therefore, for the reasons expressed above in the sufficiency of the evidence section of this Opinion, Petitioner's claim on this ground is DENIED.

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings, this court denies a certificate of appealability in this case (COA). A district court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2), the Supreme Court set forth the methodology to be used in evaluating a request for a COA. A petitioner need not demonstrate that he should prevail on the merits, but rather must demonstrate that the issues are debatable among jurists of reason, that the court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *Barefoot*, 463 U.S. at 893, n. 4.

The court believes that Petitioner has not demonstrated that the issues raised are debatable among jurists of reason. The court would not resolve the issues in a different manner nor does it believe the questions are adequate to deserve encouragement to proceed further. Petitioner has not made a substantial showing of the denial of a constitutional right.

Further, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," which has happened here on ground three, a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added); see also

*Jimenez v. Quarterman*, 555 U.S. 113, 119 n.3 (2009). This court concludes that jurists of reason would not find it debatable whether Petitioner's petition states a valid claim of the denial of a constitutional right and also concludes that jurists of reason would not find it debatable whether this court correctly found that Petitioner procedurally defaulted his Sixth Amendment claim concerning assistance of counsel during the trial. A COA is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Petition for Writ of Habeas Corpus By a Person in State Custody Pursuant to 28 U.S.C. § 2254 (#1) is DENIED.

(2) A Certificate of Appealability is DENIED.

(3) This case is terminated.

ENTERED this 24th day of July, 2014.

S/ COLIN S. BRUCE
U.S. DISTRICT JUDGE